IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHARLES DAWSON | * | |
| v. | * | Civil No. JFM-16-692 |
| BALTIMORE COUNTY | * | |

**MEMORANDUM**

Plaintiff Charles Dawson brings suit against defendant Baltimore County seeking damages for constitutional violations under 42 U.S.C. § 1983, and violations of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12111 *et seq.*, relating to Baltimore County's denial of Dawson's application for disability retirement benefits. Now pending is Baltimore County's motion to dismiss Dawson's complaint, or for summary judgment. The parties have fully briefed the motion, and no oral argument is necessary. *See* Local Rule 105.6. For the reasons below, the motion is granted.[1]

**BACKGROUND**

The County first hired Dawson as a County Technician in 2000, and by the end of his almost decade-long tenure with the County, the County had promoted Dawson to Technician III.[2] (ECF No. 1, ¶ 7). According to his supervisor, Dawson was "stellar in his skills and his reliability" and he had no safety issues while working for the County. *Id.*

Prior to June 2009, doctors diagnosed Dawson with auras, or brief butterfly sensations. *Id.* at ¶ 9. In June 2009, Dawson had an episode of disorientation, and doctors eventually diagnosed him with epilepsy in November. *Id.* at ¶ 8. During their treatment of him, doctors

---

[1] Because of a temporary imbalance in caseload, I am deciding this motion for Judge Hollander.
[2] Because this case is at the motion to dismiss stage, the facts are as stated in Dawson's complaint.

1

told Dawson that he could no longer drive heavy equipment, an essential part of his job as a Technician. *Id.* According to Dawson, after his diagnosis, the County gave him three options: quit, be fired, or retire. *Id.* at ¶ 10. Dawson chose to retire and apply for disability retirement benefits. To apply for those benefits, the County required him to grant it unrestricted access to his medical records and to submit to examination by a County-approved doctor, Dr. Peter Oroszlan. Dawson complied with the County's requests. Dawson alleges that Oroszlan's questioning included topics that were unrelated to his epilepsy. *Id.* at ¶ 12. After Dr. Oroszlan's examination of Dawson, he confirmed Dawson's doctors' diagnosis that Dawson could no longer perform his job, but also reported that Dawson "must have been aware that the aura experiences would lead to epileptic seizures," and that Dawson should have told the County about his condition. *Id.* at ¶ 13. Oroszlan opined that Dawson had deprived the County of "honorable and faithful service." *Id.* Dawson alleges that Oroszlan's report to the County contained information, including his complete personal medical history, beyond that necessary to determine whether he could continue working or qualified for the County's retirement benefits. *Id.* at ¶ 22. Upon review of Oroszlan's report, the Baltimore County Employee Retirement System's Board of Trustees denied Dawson disability retirement benefits.

Dawson appealed the denial of his benefits to the Baltimore County Board of Appeals, which upheld the Retirement System's decision. Dawson next moved for review of the administrative agency's decision with the Circuit Court for Baltimore County, which reversed the Board of Appeals' decision and awarded benefits to Dawson. In doing so, the Circuit Court found that the County had violated the ADA by using confidential information unrelated to Dawson's ability to continue working in its decision-making process, and also that the County's decision to deny retirement benefits to Dawson was not supported by substantial evidence. (*See*

ECF No. 5, Ex. B).³ The County appealed, but the Court of Special Appeals affirmed the lower court's decision awarding benefits to Dawson, holding that the County had violated the ADA by using Dawson's confidential medical information to determine his truthfulness. (*See id.* at Ex. C). The Maryland Court of Appeals denied the County's petition for a writ of certiorari. During Dawson's legal battle with the County, he alleges that he was unable to participate in the County's health insurance, was forced to shell out substantial legal fees, and also experienced emotional distress. *Id.* at ¶¶ 17–18.

Dawson next filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") alleging that the County had illegally inquired into his medical condition and unlawfully deprived him of disability retirement and related benefits. *Id.* at ¶ 19. The EEOC determined that there was probable cause to pursue his claim and issued a right to sue letter to Dawson. *Id.* at ¶ 24. Dawson now files suit against the County for violations of his constitutional right to privacy, procedural and substantive due process, and right to bodily integrity pursuant to 42 U.S.C. § 1983 (Count I), and for violations of the ADA (Count II).

**STANDARD**

The County has filed a motion to dismiss Dawson's complaint under Rule 12(b)(6).⁴ To adequately state a claim under Rule 12(b)(6), a complaint, relying on only well-pled factual allegations, must state at least a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The "mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v.*

---

³ Because each of the Maryland state court opinions in the prior litigation (ECF No. 5, Exs. B, C) are matters of public record, I take judicial notice of them. *See Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) ("In reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record.").
⁴ The County has also noted that its motion can be construed as one for summary judgment. Because it is unnecessary to do so, I consider its motion as a motion to dismiss.

*McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). To determine whether a complaint has crossed "the line from conceivable to plausible," a court must employ a "context-specific inquiry," drawing on the court's "experience and common sense." *Iqbal*, 556 U.S. at 680. When performing this inquiry, a court accepts "all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). A court, however, does not afford the same deference to legal conclusions. *Iqbal*, 556 U.S. at 678.

## ANALYSIS

As a preliminary matter, I note that there is only one substantive claim to address. Dawson acknowledges that Count I, which asserts § 1983 claims against the County, is time-barred and agrees to dismissal of this claim. (*See* ECF No. 5, p. 14). Accordingly, I dismiss Count I. That leaves Count II, which is Dawson's claim that the County violated the ADA. The County argues that this claim should be dismissed for four independently sufficient reasons: Dawson is not a qualified individual for the purposes of the ADA, Dawson failed to exhaust his administrative remedies, Dawson's claim is time-barred, and the County had a legitimate non-discriminatory reason for denying Dawson's retirement benefits. For his part, Dawson argues that he is a qualified individual, that the County's argument that it had a legitimate non-discriminatory reason for denying his retirement benefits is precluded by the prior state court judgment, that his claims are not time-barred, and that he exhausted all of his administrative remedies. I find that Dawson is not a qualified individual for the purposes of the ADA. Because this is dispositive of the motion, I do not reach the County's other arguments.

Under Title I of the ADA, an employer cannot discriminate against a qualified individual in "job application procedures, the hiring, advancement, or discharge of employees, employee

4

compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  Non-qualified individuals, however, do not have access to § 12112(a)'s employment protections.  *See E.E.O.C. v. Stowe-Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir. 2000) (noting that to establish a prima facie ADA employment discrimination case, a plaintiff must show she is a qualified individual).  The ADA defines a qualified individual as a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).  While the Fourth Circuit has not weighed in on the issue, other circuits are split as to whether a plaintiff who was unable to perform essential job functions at the time of an adverse employment action is a qualified individual that can bring suit under § 12112(a) of the ADA.  A majority of circuits to consider the issue, including the Sixth, Seventh, Ninth, and Eleventh Circuits, have concluded that the plain language of § 12111(8) defines a qualified individual as one capable of performing the essential functions of their job at the time of, and not only at some point before, the employer's adverse action.  Thus, those courts have reasoned that employees who are fully disabled and unable to perform the functions of their jobs at the time of an adverse action cannot assert ADA claims.  *See McKnight v. Gen. Motors Corp.*, 550 F.3d 519, 526–28 (6th Cir. 2008); *Slomcenski v. Citibank, N.A.*, 432 F.3d 1271, 1280–81 (11th Cir. 2005); *Morgan v. Joint Admin. Bd.*, 268 F.3d 456, 457–59 (7th Cir. 2001); *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1112–13 (9th Cir. 2000); *see also Beauford v. Father Flanagan's Boys' Home*, 831 F.2d 768, 771–72 (8th Cir. 1987) (holding the same in a Rehabilitation Act case).  On the other hand, two circuits, the Second and the Third, have held the opposite—that an employee who was completely disabled at the time of the adverse action, but not at some point before, can be a

qualified individual under the ADA. *See Ford v. Schering-Plough Corp.*, 145 F.3d 601, 606–08 (3d Cir. 1998); *Castellano v. City of New York*, 142 F.3d 58, 70 (2d Cir. 1998).

I side with the majority view. The ADA states that a qualified individual is one who "*can perform* the essential functions of the employment position that such individual holds or desires;" 42 U.S.C. § 12111(8)—the words "can perform," appearing in the present tense, "exclude[ ] those who, at the time of the alleged discriminatory act, are unable to perform the essential functions of employment." *Hatch v. Pitney Bowes, Inc.*, 485 F. Supp. 2d 22, 34 (D.R.I. 2007) (internal footnotes omitted). Correspondingly, the words "can perform" appear to limit qualified individuals to those "who presently (or at the time of the discriminatory act) are capable of performing the essential functions of the job." *Id.* (internal footnotes omitted). § 12111(8)'s qualified individual requirement is in contrast to other provisions of the ADA. For example, 42 U.S.C. § 12203, protects "any individual" engaged in protected activity from retaliation. *See Morgan*, 268 F.3d at 458–59 (making the same comparison). Likewise, 42 U.S.C. § 12182, the ADA's public accommodations provision, states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment" of public accommodations. *See Weyer*, 198 F.3d at 1112 (making the same comparison). As is evident from the statutory context of the ADA, Congress intended that the ADA's employment discrimination protections be limited. Therefore, I hold that pursuant to the unambiguous language of § 12111(8), a qualified individual is an individual capable of performing the essential functions of their employment position at the time of, or after, an adverse employment action.

Here, pursuant to Dawson's own allegations, he was not qualified to perform the essential functions of his job at the time of, or after, the County's denial of benefits. Dawson admits that

in June 2009, prior to his retirement and the County's denial of benefits, his doctors told him he could no longer perform essential features of his job. (ECF No. 1, ¶ 8). At this point he was no longer a qualified individual for the purposes of the ADA. Accordingly, because his ADA claim is based on the County's actions occurring after he was no longer a qualified individual, his claim is barred as a matter of law and I dismiss Count II.[5]

## CONCLUSION

For the foregoing reasons, the County's motion to dismiss is granted. A separate order follows.

---

[5] I realize that my ruling on Dawson's ADA claim may conflict with the Baltimore County Circuit Court's and Maryland Court of Special Appeals' holdings in his prior case. (*See* ECF No. 5, Exs. B, C). But the state court judgments do not have preclusive effect on the § 12111(8) issue. To start, the two state courts never considered the § 12111(8) issue and it does not appear that the issue was even argued in the state court proceeding. Second, Dawson appears to concede in his briefing that the prior state court judgment does not have a preclusive effect on the § 12111(8) issue, or the ultimate disposition of his ADA claim here. That is, he argues that the prior state court judgments have a preclusive effect only as to the County's contention that their denial of benefits was justified by legitimate and non-discriminatory reasons. (*See* ECF No. 5, p. 9 ("The County's Contentions that It had Non-discriminatory Reasons for Denying Dawson's Benefits . . . are Barred by Collateral Estoppel and Other Rules Prohibiting Relitigation of Settled Questions."); p. 13 ("All of the County's arguments from page 22 of its Memorandum until the end [which are unrelated to the § 12111(8) issue] violate the rules against relitigating issues and claims . . . ."); *see also id.* at pp. 9–13). As a result, Dawson fails to aver that the prior state court judgments have any preclusive effect as to the § 12111(8) issue or his ADA claim as a whole. It stands to reason then that the prior state court judgments do not compel a decision favorable to plaintiff on the § 12111(8) issue. In any event, even if they did, Dawson has waived his preclusion argument by failing to raise it with respect to the § 12111(8) issue. *See Georgia Pac. Consumer Products, LP v. Von Drehle Corp.*, 710 F.3d 527, 533–34 (4th Cir. 2013) (holding that a party may waive its preclusion argument by failing to timely raise it); *Dunellen, LLC v. Getty Properties Corp.*, 567 F.3d 35, 38 (1st Cir. 2009) (holding that a party's failure to raise a collateral estoppel argument constituted waiver); *Worthington v. Anderson*, 386 F.3d 1314, 1317–18 (10th Cir. 2004) (same).

| | |
|---|---|
|   August 1, 2016 |     /s/ |
| Date | J. Frederick Motz |
| | United States District Judge |